COURT OF APPEALS OF VIRGINIA


Present:  Judges Annunziata, Bumgardner and Senior Judge Hodges
Argued at Alexandria, Virginia


MELVIN IRVIN SHIFFLETT, S/K/A
 MELVIN IRVING SHIFFLETT
                                          OPINION BY
v.   Record No. 2481-97-4        JUDGE ROSEMARIE ANNUNZIATA
                                          APRIL 20, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                    James H. Chamblin, Judge

          Carla Blake Hook (E. William Chapman;
          Hazel & Thomas, on briefs), for appellant.

          Richard B. Campbell, Assistant Attorney
          General (Mark L. Earley, Attorney General,
          on brief), for appellee.


     Melvin I. Shifflett ("appellant") was convicted by jury

trial of the first degree murder of Patricia E. Smith and

sentenced to life imprisonment.  In this appeal, appellant

contends the trial court erred by:  (1) admitting the testimony

of Diane Kruger concerning appellant's commission of a prior

crime; and (2) admitting irrelevant testimony of John Howard.

We disagree and affirm appellant's conviction.

                              I.

                      FACTUAL BACKGROUND

     The facts stated in the light most favorable to the

Commonwealth, the prevailing party, establish that on the night

of October 29, 1978, Smith met a group of friends at a

restaurant. Appellant joined the group later that evening. In the early morning of October 30, the group decided to relocate to a local hotel to listen to a band. Appellant gave Smith a ride in his car. Before leaving for the hotel, Emilio Hernandez pulled his car up to appellant's car to confirm Smith's plans. Smith told Hernandez that she would see him at the hotel and asked him to order drinks for appellant and her. Neither appellant nor Smith arrived at the hotel that night. On October 31, 1978, appellant told Hernandez that he parted company with Smith when she drove off with a man in a gray Cadillac.

On November 20, 1978, Smith's body was found lying face down on the ground in Loudoun County, Virginia. With the exception of socks on her feet, Smith's body was nude from the waist down with a blue jean jacket tied around her neck. The cause of Smith's death was determined to be "strangulation by ligature." No evidence of sexual assault was found on Smith's body. David R. Simpson, an evidence technician for the Loudoun County Sheriff's Department at that time, noticed lividity marks on Smith's back, which indicated to him that she had died while lying on her back and had subsequently been flipped over. Simpson also noticed animal markings on the decomposing body.

On October 15, 1996, a grand jury charged appellant with the murder of Smith. On March 6, 1997, the Commonwealth filed a "Notice of Intention to Offer Evidence of Other Crimes." The

notice indicated the Commonwealth's intent to introduce evidence of appellant's assault on Diane Kruger as evidence of his guilt in the current prosecution. By order of August 4, 1997, the court ruled that evidence regarding crimes committed by appellant against Kruger "may be admitted to show malice, premeditation, intent, motive, conduct or feelings" of appellant towards Smith, but not to show identity. The court noted appellant's objection in its order and his renewed objection made immediately before Kruger's testimony at trial.

## A.  BREW'S TESTIMONY

At trial, Donald Brew testified about the content of multiple conversations he had with appellant while the two men were confined within the Prince William County Adult Detention Center. Appellant told Brew that in August 1978 he met Kruger in a bar and offered to help her repair a problem with her vehicle. After appellant and Kruger left the bar and took the vehicle for a test-drive, appellant attacked her with a knife. Appellant stuffed a roll of toilet paper in Kruger's mouth and blocked her nose, intending not to kill her immediately. Appellant stated he "just wanted her to get the feeling of death." Appellant repeatedly blocked Kruger's airways and then relented, stating that he enjoyed the power he exercised over Kruger by bringing her close to death. During the attack, appellant forced Kruger to perform oral sex on him but could not

sustain an erection long enough to rape her. Appellant told Brew he became fully aroused only when he had blocked Kruger's air passages with the toilet paper. Appellant acknowledged stabbing Kruger numerous times before she was able to escape by striking appellant's head with a bottle and fleeing the car.

Brew also testified that appellant admitted killing Smith in 1978 while he was free on bond for the charge of attacking Kruger. According to Brew, appellant met Smith around Halloween when she came to the service station where he worked. One evening, appellant met Smith again at a bar and arranged to give her a ride home. While sitting in appellant's car, Smith saw a Cadillac salesman she knew, went over to his vehicle for several minutes, and returned to appellant's vehicle. According to Brew, appellant drove Smith to a location near Leesburg, knowing even before he left the bar's parking lot that he was going to kill her. After parking beside a road, appellant forced Smith to perform oral sex on him and strangled her to death by wrapping her jacket around her neck. Appellant told Brew that, while he was forcing Smith to perform oral sex on him, he could only become fully aroused "when he was strangling her with the fatigue jacket."

Appellant put Smith's body in his trunk and drove to a site where he had previously delivered heavy equipment with his

brother-in-law.[1]  Appellant abandoned his plan to bury the body there when he saw lights that he had not previously noticed during his earlier daytime visit.  Brew also described appellant's efforts to conceal his involvement in Smith's murder, indicating that he cleaned his car twice and attempted to divert police attention to the Cadillac salesman who Smith encountered on the night of her death.

Brew also testified that "a couple of weeks later" appellant returned to the site where he had left the body to ensure that the body was still covered.  At that time, appellant noticed that "animals had been at the body."  Brew recalled appellant referring to both Kruger and Smith as "bitch[es]," "slut[s]," and "whore[s]."

### B.  KRUGER'S TESTIMONY

The Commonwealth subsequently called Diane Kruger as a witness.  Kruger testified that appellant approached her in a bar on August 1, 1978 and offered to help fix some problems she had with her car and which she had discussed with him at their first meeting several days earlier.  Appellant convinced Kruger to permit him to take the car for a test-drive.  Entering the passenger side of Kruger's vehicle, appellant instructed Kruger to follow a car which he claimed contained some friends on their

---

[1] Appellant's brother-in-law worked for a company that moved construction equipment between job sites.

way to a party. Appellant told Kruger to pull off the road and turn off the car while they waited to meet some of his friends. When Kruger reached to start her car again, appellant produced a knife and threatened Kruger with it. After forcing her to perform oral sex on him, appellant tied Kruger's hands and began stuffing toilet paper in her mouth. Kruger recalled that appellant repeatedly stuffed the paper into her mouth, nearly blocking her air passage, and then released the pressure. Kruger also testified that appellant was unable to maintain an erection during this two-hour assault. Once she covertly freed her hands, Kruger escaped from the car by striking appellant in the head with a bottle. While in the process of fleeing, Kruger sustained multiple stab wounds in her abdomen and in the area of her heart, lung, and side. Appellant's objection to Kruger's testimony was overruled.

## C. HOWARD'S TESTIMONY

John Howard testified that he was at his parents' house in early November 1978. The Howards' residence is approximately two-tenths of a mile from the spot where Smith's body was found. Howard recalled a round-faced white man in his mid-to-late twenties with reddish brown hair, large ears, and freckles coming to the door. Howard described the man as resembling "Alfred E. Newman," a character of MAD magazine. The man asked Howard "what [he] thought of the body down at the bottom of the

hill . . . down near the culvert . . . right off the road in plain view for everyone to see." When Howard replied that he knew nothing about the body, the visitor told Howard that it was laying face down and that it was only a mannequin with a blond wig that local children had placed there as a Halloween prank. The man told Howard one could not "tell that it wasn't a woman until you rolled the body over." The visitor continued, saying that people had already reported seeing the body to the police and that "the police didn't even respond anymore." Approximately two weeks later, Smith's body was found in the vicinity of the Howard residence. Appellant objected to this evidence after Howard testified. The court overruled the objection.

## II.

### ADMISSION OF KRUGER'S TESTIMONY

Under settled Virginia law, evidence of other crimes or bad acts is inadmissible to prove the accused is guilty of the crime charged. See Guill v. Commonwealth, 255 Va. 134, 138, 495 S.E.2d 489, 491 (1998). "Such evidence implicating an accused in other crimes unrelated to the charged offense is inadmissible because it may confuse the issues being tried and cause undue prejudice to the defendant." Id.

As an exception to the general rule of exclusion, however, evidence of other crimes or bad acts is admissible "if relevant

to a material issue or element of consequence in the case."
Foster v. Commonwealth, 5 Va. App. 316, 319, 362 S.E.2d 745, 747
(1987).  Among the permissible uses of "other crimes" evidence,
such evidence may be admitted:  (1) to prove any element of the
offense charged, (2) to show the motive, intent, or knowledge of
the accused, (3) to show the conduct and feeling of the accused
toward his or her victim, or (4) to show premeditation or
malice.  See Satcher v. Commonwealth, 244 Va. 220, 230, 421
S.E.2d 821, 828 (1992); Cheng v. Commonwealth, 240 Va. 26, 34,
393 S.E.2d 599, 603 (1990).  Such evidence is also admissible to
establish the perpetrator's identity when "some aspects of the
prior crime are so distinctive or idiosyncratic that the fact
finder reasonably could infer that the same person committed
both crimes."  Guill, 255 Va. at 138-39, 495 S.E.2d at 491.

Before "other crimes" evidence will be admitted, however,
the prior crime or bad act must be shown to have a causal
relation or logical and natural connection with the crime
charged or, alternately, the two acts must form parts of the
same transaction.  See id. at 140, 495 S.E.2d at 492-93.
Furthermore, evidence whose prejudicial impact outweighs its
probative value will not be admitted.  See Woodfin v.
Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 381 (1988).  The
trial court is charged with balancing prejudicial impact and
probative value and the court's decision is subject to reversal

only for an abuse of discretion.  See Pavlick v. Commonwealth, 27 Va. App. 219, 226, 497 S.E.2d 920, 923-24 (1998) (en banc).

Appellant contends Kruger's testimony had no causal relationship to or logical connection with the crime charged and was, therefore, not admissible under any exception to the general rule against admitting "other crimes" evidence.  We disagree.  The logical connection which exists between the two incidents is provided by the idiosyncratic characteristics they manifest.

Generally referred to as evidence of modus operandi, under the holding of Spencer v. Commonwealth, the test for the admission of such evidence is satisfied "where the other incidents are 'sufficiently idiosyncratic to permit an inference of pattern for purposes of proof.'"  240 Va. 78, 90, 393 S.E.2d 609, 616 (1990) (quoting United States v. Hudson, 884 F.2d 1016, 1021 (7th Cir. 1989) (citation omitted)).  The crimes need not be so similar as to constitute a signature or carbon copy of the case on trial.  See Spencer, 240 Va. at 89-90, 393 S.E.2d at 616.  "Rather, it is sufficient if the [evidence of] other crimes bear 'a singular strong resemblance to the pattern of the offense charged.'"  Id. at 90, 393 S.E.2d at 616 (quoting Hudson, 884 F.2d at 1021).

Although the admissibility of evidence showing modus operandi has generally been viewed as a means of proving the

identity of a crime's perpetrator, see Chichester v.

Commonwealth, 248 Va. 311, 326-28, 448 S.E.2d 638, 648-49

(1994); Foster, 5 Va. App. at 320, 362 S.E.2d at 747, the

evidence challenged in this case was not admitted to establish

identity, and the jury was instructed that they could not

consider the evidence on that issue.[2]  We see no reason, however,

to limit the admissibility of evidence showing modus operandi to

the purpose of proving identity.  When evidence of idiosyncratic

similarities in an accused's mode of attack exists and

constitutes a logical connection with the crime charged, such

evidence may be admitted for the purpose of establishing, by

inference, the accused's intent, motive, malice, premeditation,

or the accused's feelings toward the victim, as well as the

perpetrator's identity.  See Lafon v. Commonwealth, 17 Va. App.

411, 418-19, 438 S.E.2d 279, 284 (1993) (affirming the trial

court's admission of modus operandi evidence, which consisted of

prior bad acts and planning, for the purpose of proving the

accused's intent and premeditation during the crime charged);

Witt v. Commonwealth, 15 Va. App. 215, 219, 422 S.E.2d 465, 468

(1992) (affirming the admission of evidence that an accused

---

[2]The trial court instructed the jury that it could "consider evidence that the defendant committed offenses other than the offense for which he is on trial only to show malice, premeditation, intent, motive, or conduct and feeling of the defendant towards the victim in connection with the offense for which he's on trial and for no other purpose."  The jury is presumed to have followed the court's instruction of law.

committed prior burglaries in a manner similar to the crime charged for the purpose of proving, inter alia, the accused's knowledge and intent).  See also Guill, 255 Va. at 141, 495 S.E.2d at 493 (assuming without deciding that the test of Spencer, which permits the admission of "other crimes" evidence on the issue of identity when the prior crimes manifest idiosyncratic similarities with the crime charged, may support the admission of "other crimes" evidence even when the identity of the perpetrator of the crime charged is known).

Assuming without deciding that modus operandi evidence must meet the test of admissibility established in Spencer irrespective of the purpose for which it is admitted, we find that the similarities between appellant's assault on Kruger and the instant offense are sufficiently idiosyncratic to justify admission of the challenged "other crimes" evidence.  The similarities include the following:  1) each victim was a white woman in her twenties; 2) each victim encountered appellant in a bar and had been drinking; 3) each victim left with appellant in a car; 4) appellant exploited the car problems experienced by each victim; 5) appellant referred to each victim as a "slut," a "bitch," and a "whore"; 6) Kruger was almost asphyxiated with toilet paper crammed in her mouth, while Smith was murdered by strangulation; 7) appellant forced each victim to perform oral

LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657

- 11 -

(1983).

sex; and 8) in each case appellant said he could not reach full sexual arousal until he prevented his victim from breathing.  We also note that the offenses occurred within ninety days of each other, a time interval of sufficient duration to withstand appellant's challenge on the ground of remoteness.  See Moore v. Commonwealth 222 Va. 72, 77, 278 S.E.2d 822, 825 (1981); Lafon, 17 Va. App. at 419-20, 438 S.E.2d at 284-85.

Given the striking similarities between appellant's attack on Kruger and the evidence inculpating appellant in the instant offense, we find that Kruger's testimony bears a logical connection to the crime charged, as required in Guill, and provides a sound basis from which the trier of fact could infer motive, criminal intent, premeditation, malice, and the feelings of appellant toward the victim, which were at issue in the prosecution of the crime charged.  As such, the evidence was relevant and properly admitted.

We further believe that the probative value of Kruger's testimony was not outweighed by its incidental prejudicial impact on the accused.  See Woodfin, 236 Va. at 95, 372 S.E.2d at 381.  The probative value of this evidence tends to establish not only appellant's intent to sexually assault and then maim or murder Smith but also his commission of Smith's murder with premeditation and malice, as evidenced by the methods of attack

and control appellant used to overcome the victim.  Further, Kruger's testimony establishes the animus appellant felt toward his victim in the present case.

In short, we hold the trial court did not abuse its discretion in balancing the probative value of Kruger's testimony relative to any prejudicial impact on appellant and will not disturb its admission of this "other crimes" evidence.

## III.

### ADMISSION OF HOWARD'S TESTIMONY

Appellant next contends that the testimony provided by John Howard was irrelevant and thus improperly admitted.  He argues that because Howard could not identify appellant as the man who appeared at his door a few weeks after the murder, his testimony was collateral to the issues being tried.  We disagree.

"Evidence is admissible if it is both relevant and material."  Evans-Smith v. Commonwealth, 5 Va. App. 188, 196, 361 S.E.2d 436, 441 (1987).  "'Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case.'"  Braxton v. Commonwealth, 26 Va. App. 176, 186, 493 S.E.2d 688, 692 (1997) (quoting Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993)).

In this case, the identity of Smith's murderer was a fact at issue.  Evidence tending to show appellant's presence near Smith's body in November 1978 was probative on the issue of the

perpetrator's identity and corroborated the testimony of Brew, who testified that appellant murdered Smith, dumped her body near Howard's house, and later returned to the site to cover up the body. At trial, Howard gave a detailed description of the man who appeared at his door in November 1978 but could not identify appellant as that individual. As the trier of fact, the jury was entitled to weigh Howard's testimony in light of its own observations of the physical characteristics of appellant, taking into consideration Howard's inability to identify the appellant, and to draw reasonable inferences regarding the identity of the man who came to Howard's door to inquire about a woman's body that was lying in a nearby culvert. See Peterson v. Commonwealth, 225 Va. 289, 295, 302 S.E.2d 520, 524 (1983) (stating that the credibility of witnesses and the weight to be given identification testimony is a matter for the jury). See also McDonnough v. Commonwealth, 25 Va. App. 120, 132, 486 S.E.2d 570, 576 (1997) (finding that a witness' description of the perpetrator of the crime charged was probative identification evidence).

For the reasons set forth in this opinion, we affirm appellant's conviction.

                                                    Affirmed.