## CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Constance Ann Hylton

v.

Matthew Hamilton

Case No. 03-237

BY JUDGE EDWARD L. HOGSHIRE

August 3, 2005

In this civil action, Matthew Hamilton has filed a motion *in limine* to exclude evidence of another rape allegation at trial. Briefs were submitted on the matter and an oral hearing was held on July 7, 2005. The Court granted a protective order to conceal the identity of the third party, and requested that counsel file the deposition of Jane Roe ("Witness") with the Court under seal. Having reviewed the deposition, other relevant exhibits, applicable law, and the arguments of both parties, the Court grants Defendant's motion.

*Statement of Facts*

In December 2001, while Constance Ann Hylton and Defendant were students at the University of Virginia, they attended a fraternity date function together. (Deposition of Plaintiff (hereinafter P. Depo.), at 38-39.) Plaintiff claims that, although the couple played drinking games periodically throughout the course of the evening, she consumed only a small amount of alcohol. (P. Depo., at 42-52.) Some of the beverages that Plaintiff partially consumed were allegedly made by Defendant, including a dark, vanilla flavored drink and an orange drink. (P. Depo., at 47, 49.) Plaintiff's memory of the events that transpired grows poorer as the night progressed, but she claims to remember violently vomiting in a bathroom at Defendant's fraternity house. (P. Depo., at 53.) She further alleges that after she became ill, she required assistance to move, as her body felt "completely paralyzed." (P. Depo., at 54.) Plaintiff eventually passed into unconsciousness, and woke up later in Defendant's bed to find Defendant engaging in sexual intercourse with her. (P. Depo., at 19-22.) At this point Plaintiff contends that she both verbally and physically expressed objection to the intercourse. Defendant did not stop, however, and Plaintiff eventually passed back out of consciousness. (P. Depo., at 24.) Finally, Plaintiff claims that she woke up the next morning and aroused Defendant. She found her clothes folded on the couch in the room where she had slept, got dressed, and received a ride from Defendant back to her dorm. (P. Depo., at 61-62.)

After a story on the incident appeared in the local news media, Witness contacted Plaintiff anonymously, claiming that she had been sexually assaulted by Defendant in November of 2002, while she was a student at the University. (Defendant's Exhibit C.) Although Witness admits that she has no clear memory of the events that transpired on the evening in question, she provided testimony as to her best recollection of the alleged assault. (Deposition of Witness (hereinafter W. Depo.), at 21-30.) Witness claims that she encountered Defendant socially for the first time at a bar and grill on the night of her alleged rape. (W. Depo., at 16-17.) She claims to have had one beer before meeting Defendant, and says that he then prepared at least one green-colored drink for her, which she consumed. (W. Depo., at 19-21.) Witness testified that upon leaving the bar she accompanied Defendant back to his fraternity house bedroom, at which point she felt far more intoxicated than what would have been typical for the amount of alcohol she drank, and her memory grew "kind of fuzzy." (W. Depo., at 22-23.) Witness claims to remember Defendant

helping her into his lofted bed, where he took her clothes off and began having sex with her. (W. Depo., at 23.) She passed in and out of consciousness, and woke up at one point to find Defendant using a bottle of lubricant and beginning to have anal sex with her. (W. Depo., at 23, 57.) At this point Witness recalls that she "didn't have the energy or presence of mind to tell him to stop or to object to what was going on." (W. Depo., at 23, 57-58.) She again drifted out of consciousness, and claims to have awoken the next morning, put on her clothes, and walked home to her apartment. (W. Depo., at 23.)

Plaintiff now seeks to utilize this additional allegation in her case in order to prove issues such as intent, motive, and pattern of behavior. Defendant objects and has filed the motion *in limine* which gives rise to the question currently before the Court.

## Question Presented

Whether, in this civil case involving an alleged rape, the plaintiff may introduce evidence of another allegation of sexual assault committed by the defendant in order to prove a pattern of behavior, motive, or intent.

## Analysis

In Virginia, evidence that tends to show that the defendant committed a prior or subsequent crime is generally inadmissible to prove his guilt of the offense for which he is charged. *See, e.g., Kirkpatrick v. Commonwealth*, 211 Va. 269, 272 (1970); *Walker v. Commonwealth*, 28 Va. 574 (1829); *Guill v. Commonwealth*, 255 Va. 134, 138 (1998). However, several exceptions to this rule exist. Specifically, evidence of other bad acts may, in some circumstances, be admitted to prove a material fact or element of the present charge such as motive, intent, identity, knowledge, pattern of behavior, etc. *See, e.g., Bell v. Commonwealth*, 264 Va. 172 (2002); *Satcher v. Commonwealth*, 244 Va. 220 (1992); *Spencer v. Commonwealth*, 240 Va. 78, (1990); *Hawks v. Commonwealth*, 228 Va. 244 (1984). In such situations, the trial judge, in his sound discretion, must determine that the probative value of the evidence outweighs its prejudicial effect. *See Scates v. Commonwealth*, 262 Va. 757 (2001).

In order for evidence of additional sexual assaults or other crimes to be admitted in accordance with the exceptions noted above, the other acts must "be shown to have a causal relation or logical and natural connection with

the crime charged." *Shifflett v. Commonwealth*, 29 Va. App. 521, 529 (1999); *see also Guill*, 255 Va. at 140. Even a single additional bad act is potentially relevant and admissible. *See Barber v. Commonwealth*, 182 Va. 858, 864 (1944). Although the standard was initially set forth in instances where evidence was potentially relevant for purposes of determining identity, the test appears to have been extended to cases where other exceptions, such as intent and pattern, are at issue, and is met "when the other incidents are sufficiently idiosyncratic to permit an inference of pattern for purposes of proof, thus tending to establish the probability of a common perpetrator." *Spencer*, 240 Va. at 90; *see also Guill*, 255 Va. at 141; *Shifflett*, 29 Va. App. at 530-31 ("When evidence of idiosyncratic similarities in an accused's mode of attack exists and constitutes a logical connection with the crime charged, such evidence may be admitted for the purpose of establishing, by inference, the accused's intent [and] motive . . . as well as the perpetrator's identity."); *Resio v. Commonwealth*, 1998 Va. App. LEXIS 305, *9 ("The prior crime does not have to be a 'signature' crime but must show 'a singular strong resemblance to the pattern of the offense charged'.") quoting *Spencer*, 240 Va. at 90.

The courts have upheld the admission of evidence of other crimes in cases where the prior or subsequent acts were both strikingly similar to the indicted offense and particularly distinctive or idiosyncratic. *See Spencer*, 240 Va. at 88-91 (approving admission of prior acts evidence where the defendant had checked out of the same halfway house on the nights of the respective attacks, where each victim was raped and killed in the exact same manner, and where the DNA results in each case indicated the same perpetrator); *Shifflett*, 29 Va. App. at 531. However, there have been other instances in which the prior bad acts evidence was found insufficient to warrant admission at trial. *See Guill*, 255 Va. at 141-42 (finding significant differences in the fact patterns of the two crimes and also noting that the assailant's behavior was not idiosyncratic, but instead quite common); *Resio*, 1998 Va. App. at 12-13 (holding that where commonalities existed between the prior crimes and the charged offenses, the former were nevertheless inadmissible because they indicated a pattern of behavior that was typical instead of idiosyncratic).

Turning to the case at bar, the similarities in the two women's accounts are, without a doubt, compelling. However, significant differences also exist. For example: Plaintiff's encounter with Defendant was largely in the context of a fraternity date function where drinking games were played, while Witness' encounter was at a bar; Defendant served drinks to the two alleged victims that were different in color;

Plaintiff vomited after drinking, while Witness felt nauseated but does not believe that she vomited; Plaintiff verbally told Defendant to stop while he was having sex with her, while Witness does not believe that she articulated any such request; Witness alleges that Defendant engaged in anal sex with her, and Plaintiff does not; the next morning, Defendant gave Plaintiff a ride home in his car, while Witness walked home.

The courts have set forth very strict requirements for determining what constitutes a *modus operandi, see, e.g., Guill,* 255 Va. at 140, and the differences in the two accounts are enough to prevent admission of the subsequent allegation at trial. In fact, *neither alleged victim has a plain recollection of facts surrounding her alleged assault,* making it nearly impossible for the Court to find a clear pattern of behavior. Although both women believed their level of incapacitation to be disproportionate to the amount of alcohol consumed, the nature and amount of alcohol in the drinks remains a mystery. Furthermore, to the extent that Defendant displayed similar conduct in each encounter, those actions were not of an idiosyncratic nature. Unfortunately, the behaviors exhibited, exacerbated by alcohol consumption and arguably poor social judgment, are not uncommon in the current undergraduate culture. The circumstances as a whole are painfully consistent with most claims of this nature. Defendant's alleged behavior is best construed as "typical" instead of "idiosyncratic," a factor militating toward exclusion.

Even if the other allegation were relevant to the case, the requisite probative/prejudicial balancing test would also weigh in favor of Defendant. While Plaintiff hopes to use the contested evidence to show that Defendant has a pattern of drugging women in order to have sex with them, the fact remains that no chemical analysis was performed on the beverages consumed by the alleged victims. The evidence merely shows that the two alleged victims voluntarily consumed what they believed to be, at the very least, alcohol of an unknown quantity, and then freely accompanied Defendant to his bedroom. Based on nothing more, allegations made before a jury that Defendant had drugged another woman in the past would be extremely inflammatory and unfairly prejudicial. Finally, the Court is aware of Plaintiff's argument that the majority of the precedent on this issue stems from criminal case law and that the standard for admissibility should be lower in a civil matter. Even utilizing a lower standard in this civil context, however, the evidence would remain excluded due to the differences and uncertainties in the two accounts, the lack of idiosyncrasy in Defendant's alleged behavior, and the extreme prejudicial effect that would likely result.

### Conclusion

In accordance with the reasoning set forth above, the Court finds that the other allegation of rape is inadmissible as evidence at trial. Defendant's motion is therefore granted.

### August 12, 2005

In this civil action involving an alleged date rape, the parties have filed a series of motions that are currently before the Court. Matthew Hamilton has filed two motions *in limine*. The first seeks to exclude or limit the scope of non-physician expert testimony. The second requests that expert medical testimony be held inadmissible and that all evidence and argument concerning drugging therefore be excluded at trial. Defendant previously filed a similar motion that was argued on February 1, 2005. After argument, the Court decided to hold the motion in abeyance until discovery had been concluded. Discovery has since been completed, and expert witness designations and drug test results have been made available.

Constance Ann Hylton has likewise filed two motions. She first asks the Court to reconsider its recent decision excluding evidence concerning an additional alleged sexual assault by the Defendant at trial. Second, Plaintiff moves for leave to amend her designation of experts. The parties have submitted memoranda on the motions, and a hearing was held in the Court's chambers on August 10, 2005. The analysis set forth below addresses each of the relevant issues in turn. For the purposes of this ruling, the facts of the case as described in the Court's previous letter opinion, dated August 3, 2005, are adopted and a separate statement of facts is unnecessary.

### Questions Presented

1. Whether the Court should reconsider its ruling excluding evidence of another alleged sexual assault at trial.

2. Whether the Court should allow Plaintiff to amend her expert designations to include opinions concerning drugging.

3. Whether and to what extent a sexual assault counselor, a clinical social worker, and a clinical psychologist may testify at trial as to the psychological injuries of the alleged victim of sexual assault.

4. Whether expert medical testimony concerning drugging on the night of the night of the alleged incident is admissible at trial.

## *Analysis*

### *1. Motion to Reconsider*

Plaintiff's motion to reconsider the issue of admissibility of evidence of another sexual assault by the Defendant is denied. As explained in the Court's letter opinion dated August 3, 2005, such evidence would be of little relevance due to the differences in the alleged victims' respective accounts and the lack of idiosyncratic behavior on the part of Defendant. Furthermore, the testimony of "Jane Roe" would be highly prejudicial to Defendant and would essentially force him to defend against a separate allegation at trial. Therefore, the "other act" evidence remains excluded.

### *2. Motion to Amend*

According to Rule 4:1(b)(4)(A)(i) of the Supreme Court:

> A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions which the expert is expected to testify and a summary of the grounds for each opinion.

Consistent with this Rule, a Uniform Pre-Trial Scheduling Order was entered by the Court on August 3, 2004, which required Plaintiff to provide designations of her proposed experts to Defendant at least 90 days before trial. Plaintiff provided Defendant with such a list of designations on May 31, 2005. Since that time, however, the expected testimony of several witnesses has changed. Specifically, Plaintiff now expects that expert witnesses Dr. Kenneth Brasfield, Ph. D., a pharmacologist, and Dr. Eugene Corbett, M.D., a general practice physician, will testify, independent of any other alleged sexual assaults by Defendant, that Plaintiff was drugged prior to her alleged rape on the night in question.[1] (Plaintiff's Motion for Leave to Amend, ¶¶ 5-8.)

---

[1] Previously, Dr. Corbet was prepared to testify as to drugging *only* if evidence was offered at trial of another woman who alleged the same conduct by Defendant and had experienced similar symptoms. Dr. Brasfield, while scheduled to testify as to the nature of "date rape drugs," was to offer no opinion that Plaintiff herself was drugged. (Plaintiff's Supplemental Responses to Defendant's First Interrogatories and Designation of Experts as Required by

Plaintiff submitted a letter, dated August 4, 2005, to Defendant explaining the changes and has filed the relevant motion with the Court.

Counsel are entitled to rely on designations made on the date on which they were due, and changes made at the eleventh hour have the potential to prejudice trial preparation of the opposing party. However, in this instance, Defendant has not demonstrated any unfair prejudice should the Court grant Plaintiff's motion. Although counsel have only recently learned through depositions that Dr. Brasfield and Dr. Corbett are able to testify that Plaintiff was drugged based solely on her own symptoms, the specter of the drugging issue has loomed over this case for months. Clearly the contested "Jane Roe" evidence was designed to support allegations of drugging, and Dr. Brasfield has long been scheduled to testify as to the effects of "date rape" drugs generally. Indeed, defense counsel addressed these matters during its initial depositions of Plaintiff's experts and has prepared at least one of its own expert witnesses to testify on the issue. Defendant, therefore, has not been taken by surprise by allegations of drugging, and the Court will grant Plaintiff's motion. However, since granting leave to amend may substantially impact defense counsel's preparation for trial, the Court will permit reopening of pertinent depositions upon request by Defendant, so long as they are limited to the issue of "date rape" drugs and their effects.

### 3. Non-Physician Medical Testimony

In Virginia, as a general rule, only licensed medical doctors may offer expert opinions concerning the causation of *physical* injury. *See, e.g., John v. Im*, 263 Va. 315 (2002) (holding that a licensed psychologist was not qualified to testify as an expert as to the whether the plaintiff's brain trauma was the result of a car accident); *Combs v. Norfolk & Western Ry.*, 256 Va. 490 (1998); *Norfolk & Western Ry. v. Keeling*, 265 Va. 228 (2003). However, in certain situations, "other medical personnel, *e.g.*, nurses, technicians, etc. may testify as to matters within their own areas of competence." 6 Charles E. Friend, *The Law of Evidence in Virginia*, § 17-17 at 682. *See, e.g., Velazquez v. Commonwealth*, 263 Va. 95 (2002) (holding that a sexual assault nurse examiner, while not a medical doctor, was qualified to testify as an expert in a trial for rape, because she possessed sufficient knowledge, skill, and experience with respect to the subject matter); *Leonard v. Commonwealth*, 39

---

the Uniform Pre-trial Scheduling Order, ¶ 6(a)-(c), ¶ 9(a)-(c); Transcript of motions heard before the Court on February 1, 2005, at 7-8, 18.)

Va. App. 134 (2002). Outside of the context of physical causation, the requirement that an expert be a medical doctor appears to weaken, and the statutory requirement that the witness be "qualified as an expert by knowledge, skill, experience, training, or education" continues to control. Va. Code § 8.01-401.3(A). *See also Sami v. Varn,* 260 Va. 280 (2000).

In the instant matter, Plaintiff proposes to call three non-physician experts to testify concerning Plaintiff's alleged psychological injuries: (1) Ms. Kristine Hall, a licensed professional sexual assault counselor; (2) Ms. Judy Ratliff, a licensed clinical social worker; and (3) Dr. Donna Broshek, a licensed clinical psychologist with a Ph. D. Thus far during pretrial discovery, Plaintiff has sufficiently demonstrated the witnesses' "knowledge, skill, experience, training, or education" in their respective areas of expertise; therefore they cannot, at this stage, be deemed unqualified to offer opinions as to Plaintiff's potential psychological trauma. *See* Ratliff Resume; Hall, Testimony before U. Va. Sexual Assault Board, March 25, 2002; Broshek, Curriculum Vita. Although all three of these experts are qualified to testify as experts, given the fact that they represent similar fields of study, at trial they will not be permitted to simply offer cumulative testimony.

Defendant next argues that the experts should not testify because their opinions merely restate the evaluations of other doctors and the complaints of Plaintiff herself. Va. Code § 8.01-401.1 reads in relevant part:

> In any civil action any expert witness may give testimony and render an opinion or draw inferences from facts, circumstances, or data made known to or perceived by such witness at or before the hearing or trial during which he is called upon to testify. The facts, circumstances, or data relied upon by such witness in forming an opinion or drawing inferences, if of a type normally relied upon by others in the particular field of expertise in forming opinions and drawing inferences, need not be admissible in evidence.

Va. Code § 8.01-401.1. The Supreme Court decision in *Bowers v. Huddleston,* 241 Va. 83 (1991), stands for the identical proposition that expert opinions are admissible despite being based upon factual hearsay information, if such information is normally relied on by others in the field. The factual information provided by Plaintiff to each counselor is undoubtedly the kind relied upon by most professionals in that field; patients relay their experiences and feelings, allowing counselors and doctors to make diagnoses and

recommendations. The fact that the proposed witnesses rely on Plaintiff's statements is therefore not fatal to their qualification.

Furthermore, although "it is an ancient common-law precept that a witness may not base an opinion on another opinion," *Law of Evidence in Virginia*, § 17-18 at 689, that rule is qualified with respect to medical records and history. *See McMunn v. Tatum*, 237 Va. 558 (1989) (standing for the proposition that hearsay opinions, although not themselves admissible, may nevertheless be a proper basis for the expert's opinion under § 8.01-401.1). Friend speculates that this exception with respect to medical opinions may be a "tacit judicial recognition of the fact that medical personnel regularly base their opinions and actions upon the opinions of other medical people." *Law of Evidence in Virginia*, § 17-18 at 698, n. 23. Likewise in this case, clinical social workers and psychologists must routinely base their own expert opinions on the medical history and diagnoses of other doctors. Therefore, it is not inappropriate for the contested witnesses to rely on previous medical opinions in reaching their own professional conclusions as to psychological trauma.

Finally, Defendant maintains that, based upon the depositions of the contested experts, none are able to testify as to the permanency of Plaintiff's psychological injury to a "reasonable degree of medical probability." *See, e.g., Owens-Corning Fiberglas Corp. v. Watson*, 243 Va. 128 (1992); *Scarpa v. Melzig*, 237 Va. 509 (1989); *Fairfax Hosp. Sys., Inc. v. Curtis*, 249 Va. 531, 535 (1995), *quoted in State Farm Mut. Auto. Ins. v. Kendrick*, 254 Va. 206 (1997). Plaintiff readily concedes this issue and the experts should therefore not be permitted to express such an opinion at trial. However, Defendant has alleged nothing that would disqualify the witnesses from testifying as experts at trial, and the Court therefore denies Defendant's motion.

*4. Expert Medical Testimony on Drugging*

Plaintiff alleges that she was drugged on the night of the alleged assault and consequently rendered unable to resist Defendant's sexual advances. Although the Court will grant Plaintiff leave to amend her expert designations so as to include pertinent medical opinions, the question remains whether the designated experts are actually qualified to testify on the matter at trial. Defendant argues that Dr. Brasfield is unqualified to testify because he is not a medical doctor and because he is unfamiliar with "date rape drugs." Defendant also argues that Dr. Corbett is unqualified because he previously indicated that he required

the corroborating testimony of "Jane Roe" in order to testify to drugging and because Plaintiff's deposition statements indicate an inadequate foundational support for his expert opinion.

As stated above, an expert witness must be a medical doctor in order to testify as to matters of physical causation. *See Im*, 263 Va. 315; *Combs*, 256 Va. 490. Therefore, Dr. Brasfield, a pharmacologist, is unable to offer a medical opinion at trial concerning whether Plaintiff was the victim of drugging on the night of the alleged rape.[2] However, Dr. Brasfield does possess the requisite degree of knowledge, skill and education, *see* Va. Code § 8.01-401.3(A), in order to provide general testimony as to the usual symptoms produced by ingestion of toxicological drugs and to contrast these with the effects of alcohol consumption. (Brasfield Depo., at 9-11.) Defendant's assertion that Dr. Brasfield unacceptably relies upon Internet sites in reaching his opinion is largely without merit; in conjunction with reliance on his education and general expertise in the field of clinical psychoparmacology, Dr. Brasfield's Internet research does not amount to a violation of the test set forth in Va. Code § 8.01-401.1.

With respect to medical doctors' providing expert testimony, a physician need not be a specialist in a particular area of medicine in order to testify as to matters within that field; rather, such a fact simply goes to the weight of the evidence. *See Butler v. Greenwood*, 180 Va. 456 (1942). A doctor, like other expert witnesses, must base his opinion on a proper foundation, and, as stated above, utilize information that is normally relied upon by other professionals in the medical field. *See Tarmac Mid-Atlantic, Inc. v. Smiley Block Co.*, 250 Va. 161 (1995); Va. Code § 8.01-401.1. In the instant case, Dr. Corbett reviewed a transcript of Plaintiff's account of her symptoms on the night in question. Surely it is common practice for doctors to determine a patient's symptoms and reach a medical conclusion based upon those findings. Additionally, Dr. Corbett reviewed Plaintiff's emergency room report. While it is unfortunate that more documentation of physical evidence was unavailable for examination, substantial medical reports and analysis with respect to

---

[2] The Virginia Supreme Court's decision in *Velazquez*, 263 Va. at 102-04, concerning the qualification of non-physicians to testify as medical experts in matter where they have extensive training and expertise, does not apply to Dr. Brasfield. Although Dr. Brasfield is clearly accomplished in the area of drugs and their capabilities, he does not regularly work with victims of date rape or check for evidence of drugs in such victims' systems. He therefore remains unqualified to give opinions relating to the specific effect of drugs on Plaintiff.

Plaintiff's condition do not exist in this case. (Transcript of motions heard before the Court on August 10, 2005.) Dr. Corbett insisted at deposition that drugging was by far the most likely explanation for Plaintiff's symptoms. (Corbett Depo., at 45-46.) Although he could not rule out alcohol as the primary cause for Plaintiff's symptoms with a "reasonable degree of medical certainty," (*Id.*), this fact alone is insufficient as grounds to bar his testimony at trial. The Court must determine at trial whether his analysis and level of medical certainty are enough to take the opinion outside of the realm of speculation. *See Fairfax Hosp. Sys., Inc. v. Curtis*, 249 Va. 531, 535 (1995), *quoted in State Farm Mut. Auto. Ins. v. Kendrick*, 254 Va. 206 (1997). To whatever extent deficiencies remain in Dr. Corbett's testimony, they are not sufficient at this stage of the proceedings to bar him from testifying.

## Conclusion

In accordance with the foregoing analysis, the Court rules as follows: (1) Plaintiff's motion to reconsider the issue of another rape allegation is denied pursuant to the reasoning set forth in the Court's previous letter opinion; (2) Plaintiff's motion to amend expert designations is granted, but defense counsel will be afforded an opportunity to revisit depositions of pertinent witnesses upon request; (3) Defendant's motion to exclude or limit expert testimony of Plaintiff's non-physician witnesses is overruled in all respects, except that the witnesses will not be allowed to testify as to permanent psychological injury; and (4) Defendant's motion to exclude evidence of drugging is denied, but Dr. Brasfield will not be allowed to testify as to whether or not Plaintiff was actually drugged.