KENNETH WAYNE WOODFIN

V.

COMMONWEALTH OF VIRGINIA

Record No. 880244

September 23, 1988

Present: All the Justices

*Ned M. Mikula; Cary B. Bowen,* for appellant.
*Christopher J. Collins* for appellant, on ineffective assistance of counsel claim.
*Richard B. Smith, Assistant Attorney General (Mary Sue Terry, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

On October 24, 1984, near 8:45 p.m., Susan Hall and Frank Gabbin were shot and killed in the residence they shared at 111 Strawberry Street in the City of Richmond. Tried by a jury upon separate indictments for capital murder of Hall, murder of Gabbin, and use of a firearm in the respective killings, Kenneth Wayne Woodfin was found guilty of all charges. Confirming the verdicts, the trial court sentenced defendant to life terms for capital murder and first-degree murder, and terms of specific years for the firearms charges.

After an appeal of the convictions had been taken to the Court of Appeals, on motion of the Court of Appeals we certified the case for review by this Court, Code § 17-116.06(B)(1), because the appeal challenges the constitutionality of a portion of Code § 18.2-31, which defines capital murder. The effect of the certification is to transfer jurisdiction over the case to this Court for all purposes. Code § 17-116.06(A).

Eyewitness testimony placed defendant, who was married to Hall's sister, at the front door of the Strawberry Street residence near the time of the killings. Another witness heard the sound of "one sharp crack," a scream, and then four more "sharp cracks" from the direction of the residence at the approximate time of the deaths. Gabbin died from one shot to the back of his head. Hall had been shot four times. Evidence of other crimes involving defendant in Hanover County and the City of Richmond occurring immediately after these murders connected a .357 Magnum re-

volver to defendant and established that the weapon was used to kill Hall and Gabbin.

First, defendant contends the trial court erred in overruling a motion to quash the capital murder indictment on the ground that the statute upon which it was based is facially unconstitutional. Code § 18.2-31(g) provides that capital murder is the "willful, deliberate and premeditated killing of more than one person as a part of the same act or transaction." Citing the statute, the indictment read that defendant "willfully, deliberately and with premeditation did kill and murder Susan Hall, as part of the same act or transaction during which he did also kill and murder Frank Gabbin, Jr." We do not agree with defendant's contention that the "same act or transaction" language of the statute is vague and indefinite.

■ Defendant has no standing to make a broad and general facial statutory challenge because neither does he contend that his conduct was constitutionally protected nor is the First Amendment implicated. Thus, the narrow question is whether § 18.2-31(g) is vague as applied to the defendant's conduct in this case. *See Stanley* v. *City of Norfolk*, 218 Va. 504, 508, 237 S.E.2d 799, 802 (1977). We hold that it is not.

A penal statute is void for vagueness if it fails to give a person of ordinary intelligence notice that his contemplated conduct is forbidden by the statute and if the enactment encourages selective law enforcement. *Flannery* v. *City of Norfolk*, 216 Va. 362, 366, 218 S.E.2d 730, 733 (1975). These are "complementary and interrelated parts of the test of vagueness *vel non* as applied to the conduct of the person before the court." *Stanley*, 218 Va. at 509, 237 S.E.2d at 802.

■ In the context of this statute, there is nothing uncertain or ambiguous about the phrase "same act or transaction" when applied to defendant's actions. The language is synonymous with "same criminal episode." *State* v. *Boyd*, 271 Or. 558, 565-66, 533 P.2d 795, 799 (1975). In other words, two offenses arise out of the "same act or transaction" if they are connected so closely "in time, place and circumstance that a complete account of one charge cannot be related without relating details of the other charge." *State* v. *Fitzgerald*, 267 Or. 266, 273, 516 P.2d 1280, 1284 (1973).

■ In the present case, the evidence shows that two murders were committed at the same location, about the same time, and

under the same circumstances. Therefore, given his conduct, defendant reasonably should have been on notice that the statute applied to his actions when it defined capital murder as killing "more than one person as a part of the same act or transaction." Thus, the statute satisfies the constitutional requirement of definiteness and complies with the standard forbidding arbitrary and erratic law enforcement.

Second, defendant raises two issues involving evidentiary matters. He argues that the evidence was insufficient to support his convictions and that the trial court abused its discretion in admitting evidence of other offenses involving defendant. These contentions require a more detailed recitation of the facts. In accordance with settled appellate principles, we will view the evidence for sufficiency purposes in the light most favorable to the Commonwealth.

On the day of the murders, October 24, a Wednesday, defendant obtained the use of a friend's automobile in Petersburg. The car was a white 1978 Dodge sedan with a red top. During that afternoon, defendant arrived at his mother's Petersburg home in the automobile accompanied by his wife, Jean, from whom he was estranged, and by Susan Hall. Later in the afternoon defendant, his wife, and Hall left in the white car.

Later that day, about 8:45 p.m., a witness who lived directly across from 111 Strawberry Street "heard what sounded like a sharp sound, a sharp crack, and then . . . a woman's voice sort of yell out, and then . . . another series of short crack sounds" from the direction of the victims' residence. At the time, the witness paid no further attention to the sounds but reported the information to the police the next morning.

About 8:50 p.m., another witness had parked his automobile across Strawberry Street from No. 111. As he was alighting from his car, he saw a man he later identified as defendant open the front door at No. 111 and stand in the doorway at the threshold. According to the witness, defendant "was staring directly" at him and the witness observed defendant for about 30 seconds. A light on the porch fully illuminated defendant's face.

Still later that day, near 10:10 p.m., a Hanover County deputy sheriff was sitting in his stopped police vehicle in Ashland, about 16 miles north of Richmond. Without warning, shots were fired from a white Dodge automobile with a red top, wounding the deputy. He identified defendant as his assailant. Other officers re-

sponded to the scene and chased the defendant in the car for several miles before it was abandoned and defendant escaped. Upon inventory of the automobile, empty shell casings were found on the front floorboard.

The next morning, October 25, about 6:30 a.m., officers from the Hanover County sheriff's department were searching for Jean Woodfin, defendant's wife. They went to 111 Strawberry Street, observed her automobile parked nearby, and proceeded to the front door. Upon looking through the windows, the officers observed the bodies of Hall and Gabbin inside the residence. Investigators found, among other items, five empty .38 caliber cartridges on the living room floor.

Hall's body was in the living room and Gabbin's body was nearby in the dining room. The medical examiner opined that both died about 9:00 p.m. on October 24. As previously noted, Gabbin died from one shot to the head. Hall sustained four gunshot wounds, two of which caused her death.

The next day, October 26, Richmond police officer Cheryl Nici was performing off-duty security work in uniform at the Marriott Hotel near Fifth and Broad Streets in Richmond. About 11:00 p.m., defendant, dressed in a royal blue jogging suit, approached Nici as she was standing in front of the hotel, handed her a note, and shot her in the face without warning. Defendant fled the scene. A short time later, police officers found the jogging suit and a .357 Magnum revolver abandoned in an alley near the hotel. Defendant was arrested three days later.

Expert testimony established that the bullets removed from the bodies of Hall and Gabbin were fired from the pistol found in the alley. According to the evidence, "a caliber .357 Magnum revolver . . . [has] the capability of firing the .38 special cartridge." The forensic testimony also showed that the cartridge casings recovered from the floor of the living room at 111 Strawberry Street, as well as the casings found on the floorboard of the white Dodge automobile, were all fired from the revolver found in the alley. In addition, testimony established that bullets removed from the Hanover deputy sheriff and Officer Nici were fired from the revolver found in the alley.

As the defendant recognizes, the prosecution offered evidence of the Hanover County offense and the other City of Richmond offense in order to connect defendant with the firearm used to murder Hall and Gabbin. While conceding that this evidence has

"some" relevance to this case, defendant contends that the prejudicial effect "outweighed its minimal relevance" and, therefore, the trial court abused its discretion in admitting it. We do not agree.

Generally, proof tending to show an accused committed other crimes at other times is incompetent and inadmissible for the purpose of showing commission of the particular crime charged. *Kirkpatrick* v. *Commonwealth*, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). But such evidence is admissible "if it tends to prove any relevant element of the offense charged" or if "the evidence is connected with or leads up to the offense for which the accused is on trial." *Id*. Nevertheless, evidence of other crimes is permitted only when "the legitimate probative value outweighs the incidental prejudice to the accused." *Lewis* v. *Commonwealth*, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983).

In this case based on circumstantial evidence, proof that defendant was the criminal agent, an essential element of the offenses, depended on linking him with the revolver used to kill the victims. This was accomplished through the evidence of the shootings of the Hanover deputy and Officer Nici. That evidence connected defendant to the Strawberry Street murders by placing the murder weapon in defendant's hand within two hours and two days respectively of the time of the slayings. Moreover, the trial court admonished the jury on at least three occasions about the limited effect of the "other crimes" evidence and that it should not be considered on the ultimate question of guilt or innocence of the crimes charged. Consequently, we conclude that the probative value of the challenged evidence outweighed any incidental prejudice to the accused and that the trial court did not abuse its discretion in admitting it. *See Tuggle* v. *Commonwealth*, 228 Va. 493, 506-07, 323 S.E.2d 539, 546-47 (1984), *cert. denied*, 478 U.S. 1010 (1986).

The question whether the evidence was sufficient to convict requires little further discussion. There was abundant proof that defendant was the criminal agent. Also, the evidence was entirely sufficient to establish that defendant willfully, deliberately, and with premeditation murdered Hall and Gabbin, using a pistol.

Likewise, the jury reasonably could infer from the facts presented that Hall was killed as part of the same act or transaction as Gabbin. From the evidence, the jury was entitled to find that the initial "crack" heard by the witness was the shot which

killed Gabbin, that Hall screamed, and that the next series of "cracks" were the shots fired by defendant which killed Hall. As we already have said, these offenses were committed at the same location, about the same time, and under the same circumstances.

Defendant's third main contention is that his conviction and punishment for the Gabbin murder violated the constitutional guarantee against double jeopardy. Defendant, noting that he was indicted separately for the capital murder of Hall and the murder of Gabbin, argues that because he was sentenced to a life term on each charge, he "was effectively punished twice for one offense; the willful, deliberate and premeditated killing of Frank Gabbin." We reject this contention.

The Fifth Amendment guarantee against double jeopardy, enforceable against the states through the Fourteenth Amendment, consists of three separate constitutional protections. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.* (footnotes omitted). The present case involves the third protection because the defendant's convictions occurred in a single trial. *Blythe v. Commonwealth*, 222 Va. 722, 725, 284 S.E.2d 796, 797-98 (1981). "In the single-trial setting, 'the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.' " *Id.*, 284 S.E.2d at 798 (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). Thus, the focus is on legislative intent where, as here, the General Assembly has "clearly indicated its intent to impose multiple punishments." *Turner v. Commonwealth*, 221 Va. 513, 530, 273 S.E.2d 36, 47 (1980), *cert. denied*, 451 U.S. 1011 (1981).

In *Fitzgerald v. Commonwealth*, 223 Va. 615, 292 S.E.2d 798 (1982), *cert. denied*, 459 U.S. 1228 (1983), we reviewed the current capital murder statutory scheme and its legislative history and said that the "overriding purpose" of the murder statutes is gradation. "The General Assembly grades murder in order to assign punishment consistent with prevailing societal and legal views of what is appropriate and procedurally fair." *Id.* at 636, 292 S.E.2d at 810. Because of this overriding purpose, "we can divine no legislative intent to eliminate punishment for other

offenses included in the murder statutes solely for the purpose of categorizing the murder." *Id.*

The General Assembly has authorized punishment for murder of the first and second degree. Code § 18.2-32. By providing in subsection (g) of Code § 18.2-31, the capital murder statute, for punishment for killing of "more than one person as a part of the same act or transaction," we cannot say that the legislature intended elimination of underlying sentencing authority for murder of the first degree.

Here, defendant has received a life sentence for the killing of Hall and a life sentence for the killing of Gabbin, not two life sentences for the killing of Gabbin. Defendant was not put in jeopardy under the capital murder indictment for the gradation crime. Therefore, we hold that the imposition of sentence against defendant for the murder underlying his capital murder conviction did not violate the guarantee against double jeopardy.

Finally, defendant raises two issues relating to his attorneys and his representation at trial. Through appellate counsel who represented him at trial, defendant contends that the trial court abused its discretion in refusing to grant his motion for withdrawal of court-appointed counsel. We do not consider that issue because no argument was made on brief in support of the alleged error and because the appellate record is insufficient to enable us properly to decide the question.

Also, through different counsel who appeared on appeal only, defendant asserts that in refusing to replace his court-appointed attorneys, defendant was denied his right to effective assistance of counsel. Defendant does not attack the professional competence of court-appointed trial counsel. Rather, as we understand his rather nebulous argument, he claims that there had been a "total breakdown of the attorney-client relationship" to such an extent that court-appointed counsel could not effectively represent him under the circumstances existing at the trial.

At the bar of this Court, however, counsel advocating this position candidly, and commendably, stated that if he is limited to the contents of the record in the present appeal, "then I can't really argue the basis of my case because most of what rendered counsel ineffective went before the capital case came to trial." According to his brief, counsel is referring to defendant's prior experiences with these court-appointed trial counsel, and other attorneys, during the course of prosecutions arising from defendant's shooting

spree of late October 1984. In the brief, defendant tells us that he not only was prosecuted for the crimes in Richmond and Hanover discussed previously, he also was prosecuted for the October 24, 1984 murder of his wife and use of a firearm in commission of that crime in Petersburg. Some of those trials were held before the instant trial.

Of course, we are limited to the appellate record in this case in consideration of issues presented here. We are not permitted to supplement the record by referring to the trial of other cases not consolidated with this case on appeal and not made a part of this record. Accordingly, we also do not consider the other counsel-related issue.

For these reasons, the judgment of conviction which is the subject of this appeal will be

*Affirmed.*