COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


WALTER J. GRAVES

MEMORANDUM OPINION* BY

v.        Record No. 0425-06-2                    JUDGE SAM W. COLEMAN III
                                              APRIL 3, 2007

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF PRINCE GEORGE  COUNTY
Samuel E. Campbell, Judge

W. Edward Tomko, III (Novey and Tomko Law Firm, on brief), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Walter J. Graves was convicted in a bench trial of three counts of forging a public

document, three counts of uttering a public document, and one count of driving after having been

declared an habitual offender.  He contends the trial court erred by admitting irrelevant and

highly prejudicial evidence of a prior bad act that occurred three years before the crimes for

which he was convicted.  We hold that the trial court did not err and affirm his convictions.

BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Archer v. Commonwealth,

26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App.

438, 443, 358 S.E.2d 415, 418 (1987)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Trooper Dale Kennedy testified that on September 2, 2003 he stopped a car being driven by Graves who, at the time, identified himself as Thomas Woodel. Kennedy issued three traffic summonses to the driver in the name of Woodel for driving with a defective windshield, failing to wear his seatbelt, and failing to possess a valid driver's license. Graves signed the summonses using the name, "Thomas Woodel." Kennedy identified Graves in court as the person who signed Woodel's name to the summonses and who orally provided him with Woodel's identifying information. When Kennedy subsequently discovered that Graves may have used a false name and signed the summonses with a forged signature, Kennedy confronted Graves with the fact he had forged Woodel's name to the summonses. When confronted with Kennedy's assertions, Graves denied that he had been the person driving the car and denied forging the summonses. Kennedy testified that Graves was the person driving the car and, moreover, was the sole occupant of the car when he had stopped it.

Thomas Woodel, who was called on behalf of the Commonwealth, testified that Graves had worked for his company from 1998 through 1999. Woodel testified he was not the person driving the car that Kennedy had stopped on September 2 and not the person who had signed the summonses.

As a witness on behalf of Graves, Jean Harvell testified that she was Graves's girlfriend and that she was a front seat passenger in the car on September 2 when Kennedy stopped it. She testified that when Kennedy stopped their car he gave her a summons for not wearing a seatbelt. She further testified that Graves was not the sole occupant of the car and in addition to her and Graves, James King was not only an occupant in the car but he was the driver. In support of her testimony, the trial court admitted into evidence a summons issued to Harvell by Kennedy listing the same car, date, and time as those listed on Graves's summonses. Harvell testified she believed King had also gotten a summons for not wearing a seatbelt, but she was not certain.

In his defense, Graves testified he was not driving the car which Kennedy stopped and he did not sign the summonses. He said he was, in fact, a backseat passenger and he did not think Kennedy saw him because the car windows were tinted. On cross-examination, Graves denied ever having previously used the name and identity of Thomas Woodel. However, on further questioning Graves admitted he was the person in a police record photograph (mug shot) taken ten days after Kennedy had stopped the car in question, which photograph listed the name as Thomas Woodel. Thereafter, Graves admitted having initially given the name Woodel on this occasion when the photograph was taken but testified he "changed it and told him who I was."

On rebuttal, the Commonwealth called Trooper John Anderson, who testified that he had investigated an automobile accident in 2000 involving Graves as the driver of a car owned and occupied by Harvell, on which occasion Graves had identified himself and used the name, "Thomas Eugene Woodel." Trooper Anderson further testified that when he arrived at the two-car accident Harvell was outside the car. She told Anderson she had been driving the car. Anderson knew however, that Graves "had actually jumped into the back seat, [and] knew [Graves] was driving because his leg was hanging over the driver's seat." Anderson spoke with Graves and asked his name. Graves "identified himself as Thomas Eugene Woodel." Anderson asked Harvell what Graves's name was, and "she also identified him as Thomas." Anderson said that he "ran [the] information" Graves had provided "as far as address, Social Security number, date of birth" for Woodel, and it checked out. Later, at the hospital, however, Anderson learned Graves's true name.

Graves objected that this evidence was not relevant and was prejudicial and inadmissible. The trial judge overruled the objection.

DISCUSSION

The sole issue presented in this appeal is the admissibility of the evidence which proved that on a prior occasion approximately three years before the events at issue here both Graves and Harvell had undertaken, under circumstances strikingly similar to the situation here, to falsely identify Graves as Thomas Woodel to law enforcement officers who were investigating an automobile accident.

> Generally, evidence that shows or tends to show that the accused committed other crimes [or other bad acts] is not admissible for the purpose of proving that the accused committed the crime charged. However, evidence of prior crimes [or bad acts] may be admissible if it tends to prove any relevant fact of the offense charged. One such fact is the identity of the accused.

Berry v. Commonwealth, 22 Va. App. 209, 212, 468 S.E.2d 685, 686-87 (1996) (holding that where defendant questioned accuracy of identification throughout trial, including his own testimony and that of alibi witnesses, Commonwealth's witness could testify involving prior occasions where defendant was identified by that witness); see also Spencer v. Commonwealth, 240 Va. 78, 89, 393 S.E.2d 609, 617 (1990) (evidence of other crimes may be admitted to establish the perpetrator's identity).

Throughout the trial, Graves challenged Kennedy's identification of him as the person who was driving the car and signed the name, Thomas Woodel, on the summonses. Graves not only testified that he was not driving but stated he was a backseat passenger. Additionally, he presented alibi testimony through Harvell that someone else was driving. Identity as to who was driving and who forged the name "Thomas Woodel" on the summonses was the critical fact at issue. Thus, evidence that tended to prove that he was the driver and which also refuted or impeached his alibi evidence was highly relevant to prove Graves's identity as the person who signed Thomas Woodel's name. Additionally, by Graves testifying and having Harvell testify that he was not the person who signed the summonses, Graves opened the door for the

- 4 -

Commonwealth to impeach their credibility by showing they had engaged in a similar fraudulent scheme on an earlier occasion. See McGowan v. Commonwealth, 48 Va. App. 333, 341-42, 630 S.E.2d 758, 762-63 (holding that defendant opened the door for Commonwealth to impeach her during rebuttal with other crimes evidence after she testified and denied her guilt), aff'd on reh'g en banc, 49 Va. App. 87, 637 S.E.2d 330 (2006).

The evidence was highly relevant in that it tended to corroborate Trooper Kennedy's identification of Graves as the driver and it also impeached the alibi evidence of Graves and Harvell by showing they should not be believed because they had engaged in a similar plan or scheme for an illegitimate purpose. Therefore, the trial court did not abuse its discretion by ruling that Trooper Anderson's testimony regarding Graves's prior bad acts or Trooper Kennedy's testimony concerning Graves's subsequent use of Woodel's name to identify his picture were relevant.

Although the other "bad acts" evidence was highly probative in establishing Graves's identity and in impeaching Graves and Harvell, in order to be admissible, its probative value must outweigh any incidental prejudice to the defendant. Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380-81 (1988). "The decision on whether the probative value of the evidence of other crimes outweighs any prejudice to the defendant is left largely within the sound discretion of the trial judge, and is reviewed only for abuse of discretion." Berry, 22 Va. App. at 213, 468 S.E.2d at 687; see also Spencer, 240 Va. at 90, 393 S.E.2d at 617.

Here, the evidence was highly relevant to prove identity which was the most material issue in dispute. We cannot say that the trial court in this bench trial abused its discretion in finding the probative value of the evidence outweighed the resulting incidental prejudice. Sitting as the fact finder in a bench trial, the trial judge is presumed to have properly considered such

evidence for its probative value and disregarded any incidental prejudice that could otherwise have been inferred.  Thus, we affirm the convictions.

<u>Affirmed.</u>