COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Humphreys, and Senior Judge Willis
Argued at Chesapeake, Virginia


SANDRA LANETTE PIERCE
                                                      OPINION BY
v.        Record No. 1098-06-1                JUDGE ROBERT J. HUMPHREYS
                                                  NOVEMBER 20, 2007
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Dean W. Sword, Jr., Judge

Stephen Merrill (Ghent Law Offices, on brief), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Sandra Lanette Pierce ("Pierce") appeals her conviction of possession of marijuana with

intent to distribute, in violation of Code § 18.2-248.1.  On appeal, Pierce argues that the trial

court erred in allowing testimony that Pierce had been previously convicted of perjury.  Pierce

contends that this error can never be harmless, and, thus, her conviction must be reversed.[1]  For

the following reasons, we hold that the trial court erred in admitting testimony regarding Pierce's

conviction for perjury, but that the error was harmless.  Thus, we affirm Pierce's conviction.

I.  BACKGROUND

On appeal, we review the evidence in the light most favorable to the Commonwealth, the

prevailing party below, giving it the benefit of all reasonable inferences.  Martin v.

Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).  So viewed, the evidence

established the following.

_____

[1] This Court denied Pierce's appeal with regard to the sufficiency of the evidence to
support the conviction for possession with intent to distribute.

On July 22, 2005, the Portsmouth Police Department conducted surveillance on Pierce's home at 2210 King Street because of complaints regarding narcotics activity. Officer J.C. Knorowski ("Knorowski") saw Pierce, who was sitting on the front porch, empty the tobacco from a cigar, replace the tobacco with marijuana, and smoke the cigar. Pierce did this twice. A man approached the porch and smoked one of the cigars with Pierce.

Following Knorowski's observations, Detective Grover ("Grover") and Detective Lipscomb ("Lipscomb") knocked on the back door of the house while other officers knocked on the front door. When the officers knocked, someone attempted to leave the house through a rear window. The officers entered the house, "froze" it, and brought everyone out to the front porch. Grover and Lipscomb left to secure a search warrant. When they returned, they executed the warrant and recovered marijuana.[2]

Grover arrested Pierce and interviewed her. Grover told Pierce that an officer had observed her smoking marijuana, to which she stated, "I did that." However, she denied knowing about anything else going on in her house.

A grand jury indicted Pierce for possession of marijuana with intent to distribute, in violation of Code § 18.2-248.1. At trial, Grover described his initial encounter with Pierce. The prosecutor, the trial court, and Grover had the following colloquy:

> [TRIAL COURT]: Do you know what's up on High Street in the 2200 Block?
>
> [GROVER]: Yes. Right across from that would be the BP station at the corner of Martin Luther King Highway and High Street and the Essex Food Mart.
>
> [THE COURT]: Yes, I know where you are talking about.
>
> [PROSECUTOR]: Is it fair to say it's a high crime area?

---

[2] The officers recovered three plastic bags of marijuana. The bags contained the following amounts: 0.17 ounce, 7.30 ounces, and 0.58 ounce.

[GROVER]: Yes.

[PROSECUTOR]: Is it fair to say it's an open-air drug market?

[GROVER]: Yes. I – at the point where I told her that there was no way she wouldn't know, that she couldn't know what was going on [inside her house] from the observations and the smells and everything else that was in her house, Miss Pierce said I swear on my kids' [sic] life that she didn't know what was going on, and at that point I said, "Didn't you get charged and convicted of perjury[?]"

Defense counsel promptly objected and moved for a mistrial. The trial court denied the motion, stating that it would allow the statement because "we don't have a jury . . . [and] it's part of the interrogation process as to what was going on." The conversation continued as follows:

[PROSECUTOR]: You said she had been convicted of perjury.

[GROVER]: I said, "Didn't you get charged and convicted of perjury? That's lying." Miss Pierce said, "Yeah, but that was just in court," and at that point I was pretty disgusted and I just ended the interview and walked out.

Defense counsel again renewed his motion for a mistrial, which the court denied. Pierce never testified in her defense, and, ultimately, the trial court convicted her of possession of marijuana with intent to distribute, in violation of Code § 18.2-248.1. In finding Pierce guilty, the trial court noted that "if there was any doubt in the Court's mind . . . the testimony of Miss [Kisha] LeBray makes it pretty clear that this defendant was at least a co-possessor of the items."[3] The trial judge remarked further:

To tell you the truth, I was sitting here listening to the Commonwealth's case and I was saying Boy, this is going to be

_____

[3] LeBray, Pierce's cousin who was called to testify by the defense, testified that the marijuana was on top of Pierce's dresser in her bedroom. And although Pierce never admitted to LeBray that the marijuana was hers, LeBray testified that she never saw anyone else in actual possession of the marijuana. Moreover, LeBray testified that no one in the house told the officers that the marijuana belonged to someone other than the owner of the house. Pierce was the leaseholder at the address.

- 3 -

close.  Then Miss LeBray took the witness stand and while she was testifying I was thinking Boy, I bet if [the Commonwealth's Attorney] knew she was going to say what she was saying, he'd have called her as a witness [for the Commonwealth].

The trial court sentenced Pierce to three years in the penitentiary, with two years and nine months suspended.  Pierce now appeals.

## II.  ANALYSIS

### A.  The Admissibility of the Perjury Conviction

"Generally, proof tending to show an accused committed other crimes at other times is incompetent and inadmissible for the purpose of showing commission of the particular crime charged."  Woodfin v. Commonwealth, 236 Va. 89, 95, 372 S.E.2d 377, 380 (1988) (citing Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)).  However, "such evidence is admissible 'if it tends to prove any relevant element of the offense charged' or if 'the evidence is connected with or leads up to the offense for which the accused is on trial.'"  Id. at 95, 372 S.E.2d at 380-81.  Evidence of other crimes or convictions may also be admitted for the purpose of, among other things, impeaching the credibility of a witness who has placed their credibility in issue by testifying, including a criminal defendant.  See Hackney v. Commonwealth, 28 Va. App. 288, 293, 504 S.E.2d 385, 388 (1998) (*en banc*).  "Nevertheless, evidence of other crimes is permitted only when 'the legitimate probative value outweighs the incidental prejudice to the accused.'"  Woodfin, 236 Va. at 95, 372 S.E.2d at 381 (quoting Lewis v. Commonwealth, 225 Va. 497, 502, 303 S.E.2d 890, 893 (1983)).

In this case, Grover testified about his conversation with Pierce, specifically her acknowledgement of having previously been convicted of perjury.  Pierce's perjury conviction was not relevant to prove motive, intent or any element of the offense charged.  In short, Pierce's propensity to lie under oath had nothing to do with the crime for which she was being tried,

possession with intent to distribute. In context, the only purpose possibly served by such testimony would be to impeach Pierce's credibility. Pierce, however, had not testified and, consequently, her credibility was not in issue. Therefore, this record supports no appropriate exception to the general rule prohibiting the admission of previous crimes into evidence. As such, we hold that the trial court erred in allowing testimony regarding Pierce's prior conviction for perjury and we must now determine whether the error was harmless.

## B. Harmless Error

A non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678. "'[A] fair trial on the merits and substantial justice' are not achieved if an error at trial has affected the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (*en banc*). "[T]he harmless error doctrine enables an appellate court or a trial court when considering a motion to set aside a verdict to ignore the effect of an erroneous ruling when an error clearly has had no impact upon the verdict or sentence in a case." Hackney, 28 Va. App. at 296, 504 S.E.2d at 389. "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911. "Furthermore, in a bench trial, the trial judge is presumed to disregard prejudicial or inadmissible evidence, and this presumption will control in the absence of clear evidence to the contrary." Hall v. Commonwealth, 14 Va. App 892, 902, 421 S.E.2d 455, 462 (1992) (*en banc*) (citations omitted).

The analysis of this issue is controlled by our decision in Cole v. Commonwealth, 16 Va. App. 113, 428 S.E.2d 303 (1993). In Cole, the trial court admitted evidence, over the appellant's objection, that the appellant had two prior convictions for grand larceny. Id. at 115,

428 S.E.2d at 305. On appeal, we upheld the admission of the first conviction but held that the

trial court erred in allowing evidence of the second conviction. Id. However, we held that the

error was harmless because the trial judge, as opposed to a jury, sat as the finder of fact. Id. at

116, 428 S.E.2d at 305. Specifically, we held that:

> "A judge, unlike a juror, is uniquely suited by training, experience
> and judicial discipline to disregard potentially prejudicial
> comments and to separate, during the mental process of
> adjudication, the admissible from the inadmissible, even though he
> has heard both." Eckhart v. Commonwealth, 222 Va. 213, 216,
> 279 S.E.2d 155, 157 (1981). Consequently, we presume that a trial
> judge disregards prejudicial or inadmissible evidence. Hall v.
> Commonwealth, 14 Va. App 892, 902, 421 S.E.2d 455, 462 (1992)
> (*en banc*). Finally, "this presumption will control in the absence of
> clear evidence to the contrary." [Id.] . . . This is not to say that the
> admission of improper evidence in a bench trial may never result
> in reversible error. Where the record makes clear that the judge
> considered such inadmissible evidence in adjudicating the merits
> of the case, reversal would be appropriate.

Id. In this case, as in Cole, the trial court improperly admitted evidence of the appellant's prior

conviction. Under Cole, that error is harmless unless "the record makes clear that the judge

considered such inadmissible evidence in adjudicating the merits of the case . . . ."[4] Id.

---

[4] It is clear that there is tension between our decisions in Cole and Craddock v.
Commonwealth, 16 Va. App. 402, 429 S.E.2d 889 (1993), but that tension is not irreconcilable.
We agree with the dissent that even in a bench trial, "'when the trial judge erroneously and
unconditionally admits prejudicial evidence, we cannot presume that the trial judge disregarded
the evidence he ruled to have probative value.'" (quoting Wilson v. Commonwealth, 16
Va. App. 213, 223, 429 S.E.2d 229, 235 (1993)). We also agree that we must presume that, by
admitting inadmissible evidence, the trial judge implicitly considered that evidence for an
improper purpose. Craddock, 16 Va. App. at 407, 429 S.E.2d at 892. However, that
presumption is not irrebuttable. The primary question in any harmless error analysis is whether
an error "has had no impact upon the verdict or sentence in a case." Hackney, 28 Va. App. at
296, 504 S.E.2d at 389. Thus, we must, as Cole mandates, determine whether "the judge
considered such inadmissible evidence in adjudicating the merits of the case." Cole, 16 Va. App.
at 116, 428 S.E.2d at 305. When, as in this case, a judge clearly articulates the reasons for his
decision, and the improper evidence is not among those reasons, it is clear that the improper
evidence did not impact the verdict and the presumption is overcome.

- 6 -

There is no evidence in the record to clearly indicate that the trial court relied on the improperly admitted evidence in deciding the case. In ruling on the objection, the trial court made clear that it gave little or no weight to the prior conviction. In allowing the evidence, the court noted that "we don't have a jury" and that the statement was just "part of the interrogation process." The trial court made no mention of the prior conviction when making its final ruling in the case. In fact, in ruling on the issue of guilt, the trial court made it clear that it was the testimony of another witness that convinced him that Pierce was guilty of possession with intent to distribute.

It is also clear that the improperly admitted evidence did not affect Pierce's sentence. Prior to sentencing Pierce, the trial court ordered a pre-sentencing report pursuant to Code § 19.2-299. Under Code § 19.2-299, "the court may, or on motion of the defendant shall, before imposing sentence direct a probation officer of such court to thoroughly investigate and report upon the history of the accused, *including a report of the accused's criminal record . . . .*" (Emphasis added). Thus, at the time of sentencing, Pierce's criminal record was properly before the court in the pre-sentence report. Because the evidence of the conviction was properly before the court during the sentencing phase of the trial, it does not matter that the trial court improperly admitted the evidence during the guilt phase of the trial.

### III. CONCLUSION

For these reasons, we hold that the trial court erred in admitting Grover's testimony regarding Pierce's perjury conviction. However, we hold that the error was harmless and we affirm Pierce's conviction.

Affirmed.

- 7 -

Elder, J., dissenting.

I join the majority's holding in Part II.A. that admission of evidence of appellant Sandra Pierce's perjury conviction was error. However, I believe the decision in Cole v. Commonwealth, 16 Va. App. 113, 428 S.E.2d 303 (1993), relied upon by the majority in Part II.B. to conclude the error was harmless, compels a contrary result in light of our interpretation of it in Craddock v. Commonwealth, 16 Va. App. 402, 429 S.E.2d 889 (1993). I would reverse the conviction and remand for a new trial, and, thus, I respectfully dissent.

In Virginia, non-constitutional error is harmless "[w]hen it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached." Code § 8.01-678.

> "If, when all is said and done, [it is clear] that the error did not influence the [fact finder], or had but slight effect, . . . the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the [judgment] cannot stand."

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65, 66 S. Ct. 1239, 1248, 90 L. Ed. 1557, 1566 (1946)) (adopting Kotteakos test for determining whether non-constitutional error is harmless); see also Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991) (en banc) (discussing harmless error analysis prior to Supreme Court's adoption of Kotteakos test in Clay).

"'[H]armless error analysis . . . [is not] simply a sufficiency of the evidence analysis.'" Williams v. Commonwealth, 32 Va. App. 395, 400, 528 S.E.2d 166, 169 (2000) (en banc) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457-58, 418 S.E.2d 343, 345 (1992)). We may uphold a decision on the ground that any error involved is harmless only if we can conclude,

- 8 -

*without usurping the trial court's fact-finding function*, "'that the error did not influence the [fact finder], or had but slight effect.'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566); see Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911 (noting court may not declare an error harmless if doing so requires "usurping the [fact finder's] function").

It is well settled under this test that the erroneous admission of evidence may be harmless if evidence of guilt is so "overwhelming" and the error so insignificant by comparison that we can conclude the error "failed to have any 'substantial influence' on the verdict." United States v. Lane, 474 U.S. 438, 450, 106 S. Ct. 725, 732, 88 L. Ed. 2d 814, 826 (1986) (quoting Kotteakos, 328 U.S. at 765, 66 S. Ct. at 1248, 90 L. Ed. at 1567); see also Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 459 (2005). The erroneous admission of evidence also is harmless if the evidence admitted in error is merely "cumulative" of other, undisputed evidence. Brecht v. Abrahamson, 507 U.S. 619, 639, 113 S. Ct. 1710, 1722, 123 L. Ed. 2d 353, 373-74 (1993).

As we noted in Cole, "'[a] judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.'" Cole, 16 Va. App. at 116, 428 S.E.2d at 305 (quoting Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981)). "Consequently, we presume that a trial judge disregards prejudicial or inadmissible evidence . . . 'in the absence of clear evidence to the contrary'" in the record. Id. (quoting Hall v. Commonwealth, 14 Va. App. 898, 902, 421 S.E.2d 455, 462 (1992) (en banc)). However, *even in a bench trial, "when the trial judge erroneously and unconditionally admits prejudicial evidence, we cannot presume that the trial judge*

*disregarded the evidence he ruled to have probative value*." Wilson v. Commonwealth, 16

Va. App. 213, 223, 429 S.E.2d 229, 235 (1993) (emphasis added).

The majority holds Cole compels the conclusion that the erroneous admission of evidence

of appellant Pierce's perjury conviction was harmless, and it considers only in passing, in a

footnote, two aspects of Cole that I believe dictate a contrary result. In Cole, the evidence

erroneously admitted was the fact that Cole had previously been convicted for grand larceny. 16

Va. App. at 115-16, 428 S.E.2d at 305. The *fact* of Cole's prior convictions was admissible at

his robbery trial for impeachment purposes, and evidence of *the identity and nature* of the prior

offenses was harmless, we held, because Cole had already "opened the door" by "volunteer[ing]

the name of one of the felonies for which he had been convicted—grand larceny—without being

asked to do so by the Commonwealth." Id. at 115, 428 S.E.2d at 305. Thus, the erroneously

admitted evidence of Cole's second prior grand larceny conviction was merely cumulative of the

undisputed evidence, first volunteered by Cole, that he had a first prior conviction for grand

larceny. See, e.g., Brecht, 507 U.S. at 639, 113 S. Ct. at 1722, 123 L. Ed. 2d at 373-74

(addressing "harmless-if-cumulative" analysis).

The majority's application of Cole fails sufficiently to consider the impact of both Cole's

decision to testify in his bench trial for robbery and Cole's "open[ing] the door" to

cross-examination about the identity and nature of his prior convictions for theft by volunteering

testimony that he had been convicted for grand larceny. We made clear the impact of these

factors in Craddock, 16 Va. App. 402, 429 S.E.2d 889. Craddock involved a prosecutor's

reference in closing argument to the defendant's earlier rejection of a plea offer. Id. at 403-04,

429 S.E.2d at 890-91. The defendant twice objected and pointed out the prosecutor was arguing

facts not in evidence, but the trial court overruled those objections. Id. We concluded both that

the prosecutor's remarks were improper and, "based on the record, that the trial judge clearly

failed to recognize the impropriety of these remarks because he twice failed to sustain appellant's

objections thereto." Id. at 406, 429 S.E.2d at 892. We explained further:

> This case is clearly distinguishable from our recent holding
> in Cole v. Commonwealth, in which the challenged evidence
> concerning a prior conviction was admissible as it pertained to
> credibility. In Cole, there was no evidence that the trial judge
> considered the challenged evidence for any reason other than its
> proper purpose. We emphasized, however, that Cole did not hold
> that "the admission of improper evidence in a bench trial [could]
> never result in reversible error." [16 Va. App.] at [116], 428
> S.E.2d at 305. The facts in this case present just such an example.
> Here, the challenged information could not properly have been
> introduced into evidence for any purpose and should not have been
> included in the prosecutor's argument. Therefore, *we must
> presume, based on the trial judge's failure to sustain appellant's
> objection, that the [inadmissible] information . . . was considered
> for an improper purpose*.

Id. at 406-07, 429 S.E.2d at 892 (emphasis added) (citation omitted).

In Craddock, in contrast to Cole, the challenged argument referred to evidence that had

not been admitted and, in fact, was not admissible for any purpose. Craddock, 16 Va. App. at

406-07, 429 S.E.2d at 892. Similarly, in Pierce's case, because Pierce did not testify, the fact of

her prior conviction was not admissible for any purpose,[5] as the majority recognizes in Part II.A.

Although the trial court here acknowledged some potential for prejudicial effect from the

challenged evidence when it said "[w]e don't have a jury so I'll deny the motion for a mistrial,"

it then said, "*but I'm going to allow it [into evidence]* because . . . it's part of the interrogation

---

[5] Even if Pierce had later opted to testify, our case law would support the conclusion that this decision would not render harmless the court's *knowingly* erroneous admission of impeachment evidence in the Commonwealth's case-in-chief. Cf. Purvis v. Commonwealth, 31 Va. App. 298, 309-10, 522 S.E.2d 898, 903 (2000) (holding erroneous refusal to sever offenses in bench trial is not harmless error where only fact that would render refusal harmless is defendant's decision to testify and clear evidence establishes "that the trial court . . . used the 'harmless error doctrine . . . prospectively . . . as a basis to disregard an established rule of law'" (quoting Hackney v. Commonwealth, 28 Va. App. 288, 296, 504 S.E.2d 385, 389 (1998) (en banc))).

process." (Emphasis added). The trial court's statement that this evidence was "part of the interrogation process" does not rebut the presumption of <u>Craddock</u> that the admission into evidence of testimony concerning the perjury conviction shows the trial judge "considered [the evidence] for an improper purpose." <u>Craddock</u>, 16 Va. App. at 407, 429 S.E.2d at 892. <u>Compare</u> <u>id.</u> <u>with</u> <u>Breeden v. Commonwealth</u>, 43 Va. App. 169, 186-88, 596 S.E.2d 563, 572-73 (2004) (applying principle in rape case where victim's pre-trial statement was admissible as an exception to the hearsay rule only for the limited purpose of establishing a recent complaint of rape and where the *trial judge, in a detailed and carefully articulated ruling, "specifically said he did 'not admit [the challenged statement], and [would] not consider it relevant to . . . issues" other than to establish a recent complaint of rape* (emphasis added)).

Further, and contrary to the position taken by the majority in footnote 4, I do not believe the trial court's partial articulation of the reason for its decision in this case sufficiently rebutted the <u>Cole</u>/<u>Craddock</u> presumption that the court improperly considered the admitted evidence of Pierce's perjury conviction in determining her guilt. The trial court commented that, before defense witness Kisha LeBray testified, this was a "close" case on the issue of possession with intent to distribute. Its statement that "the testimony of Miss LeBray makes it pretty clear that this defendant was at least a co-possessor of the items" does not permit the conclusion that the court gave little or no consideration to the erroneously admitted evidence of the perjury conviction in determining what weight to give the testimony of LeBray. The court could have attributed greater credibility to LeBray's testimony and drawn more extensive inferences from it precisely because it rejected Pierce's denial of possession to police based on the court's admission of evidence of Pierce's prior perjury conviction.

Applying harmless error terminology, neither the "cumulative" evidence nor the "overwhelming" evidence formulation of harmless error analysis supports the conclusion that the

- 12 -

admission of the challenged evidence was harmless. See, e.g., Brecht, 507 U.S. at 639, 113 S. Ct. at 1722, 123 L. Ed. 2d at 373-74 (holding improperly admitted evidence may be harmless if "cumulative"); Lane, 474 U.S. at 450, 106 S. Ct. at 732, 88 L. Ed. 2d at 826 (holding improperly admitted evidence may be harmless if other evidence of guilt is "overwhelming" and the error is insignificant by comparison). Here and in Craddock, unlike in Cole, the admission of or reference to the challenged evidence was not merely cumulative of other, undisputed evidence. In addition, we cannot conclude on this record that the evidence of Pierce's guilt was so "overwhelming" and the error so insignificant by comparison that the error "'did not influence the [fact finder], or had but slight effect.'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566). The evidence supported a finding that Pierce smoked two marijuana cigars on her front porch in full view of a police officer conducting surveillance, which supported a conviction for possession. However, to prove Pierce possessed marijuana with an intent to distribute, the Commonwealth relied on circumstantial evidence that she constructively possessed a much larger quantity of marijuana, approximately eight ounces, found inside her house. LeBray's testimony, viewed in the light most favorable to the Commonwealth, established only that LeBray saw a bag of marijuana atop a dresser in one of two bedrooms in Pierce's two-story house,[6] at a time when appellant Pierce

---

[6] The majority asserts "LeBray testified that the marijuana was on top of [appellant] Pierce's dresser in [appellant Pierce's] bedroom." The Commonwealth does not contend, however, that the bedroom was appellant's, and the evidence fails to support the majority's assertion that the bedroom was appellant's. Although appellant Sandra Pierce was the lessor of the residence, the evidence established the residence had at least two bedrooms. As many as eight people may have been present when the police "froze" the scene that day while they obtained a warrant, and no evidence established how many people resided with appellant on a full-time or part-time basis. LeBray's testimony indicated that James Pierce was present that day while taking a shower and changing clothes, which suggests he may have been at least a part-time resident. Appellant's statement to Detective Grover, offered by the Commonwealth, suggested that appellant had children, who may also have resided with her. On the subject of where the marijuana was located, LeBray testified that, "when I ran upstairs, she has like the

was at some unspecified location inside the house.[7] LeBray also testified that their cousin, James Pierce, was standing next to the bag of marijuana when LeBray first saw it and that, when LeBray reported the police were at the front door, James Pierce "grabbed [the bag]" and ran.[8] Given the weakness of the evidence proving Pierce's constructive possession of the large bag of marijuana, we cannot conclude, without usurping the trial court's fact-finding function, that when the trial court determined what weight to give to Pierce's statement to Detective Grover that she did not know what was going on in her house, the trial court's erroneous admission of

---

two-piece bedroom set, I think it's called a hutch, the taller dresser, it was on top of the dresser," and James Pierce was "standing right beside it." LeBray did not testify that the bedroom in which the dresser was located was a bedroom in which appellant Pierce resided or slept. The mere fact that LeBray referred to the furniture as appellant Pierce's does not preclude the reasonable inference that appellant, the lessor, had furnished the entire house and routinely occupied some other bedroom.

[7] Although LeBray testified on direct that appellant Pierce "was present" while James Pierce was standing next to the marijuana atop the dresser in the upstairs bedroom, LeBray said "[appellant Pierce] was present *but she had just walked in*" (emphasis added), and LeBray did not indicate in what part of the house appellant was present while James Pierce stood next to the marijuana. LeBray, still testifying on direct, clarified that while she and appellant were in the house, LeBray saw the marijuana only while she, LeBray, was upstairs and that appellant was not upstairs during that period of time. The trial court was free to disregard some or all of LeBray's testimony, but if it disregarded the testimony that appellant was present only downstairs, it was left with the vague testimony that appellant "was present" at some unspecified location in the house "when [LeBray] went in the house [and] Mr. Pierce had the marijuana on top of the dresser" in the upstairs bedroom. Thus, this evidence, viewed in the light most favorable to the Commonwealth, establishes only that appellant was present inside the house when the marijuana was in plain view on the dresser and that she may or may not have seen it. At its best, this testimony constituted very weak evidence that appellant exercised joint constructive possession of the bag of marijuana that James Pierce had in his actual possession.

[8] Thus, the record also does not support the majority's statement that "LeBray testified she never saw anyone else," which would include her first cousin James Pierce, "in actual possession of the marijuana." LeBray testified only that, "when [she] first saw [the bag of marijuana]," Mr. Pierce "was standing right beside it" and that he did not "have it in his possession later downstairs." LeBray also testified that, when she announced the police were at the front door, Mr. Pierce "grabbed it" and ran through "the second bedroom" and that she could not see whether he had the marijuana in his possession after that point in time because she had turned to go back downstairs.

- 14 -

evidence of Pierce's prior perjury conviction and her acknowledgment of guilt for that offense "'did not influence the [fact finder], or had but slight effect.'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. at 1566).

Because I believe our prior holdings in Cole and Craddock compel the conclusion that the trial court's error was not harmless, I would reverse the conviction and remand for a new trial. Thus, I respectfully dissent.